In re Frank B. SWARTWOUT, Mary Lynn Swartwout, Debtors.

WESTCHESTER ENTERPRISES, INC., Plaintiff,

v.

Frank B. SWARTWOUT, et al., Defendants,

v.

PAN–WESTERN LIFE INSURANCE COMPANY, et al., Third–Party Defendants.

Bankruptcy No. 2–89–02766.
Adv. No. 2–89–0338.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Feb. 5, 1991.

Henry P. Montgomery, Baker & Hostetler, Columbus, Ohio, for plaintiff Westchester Enterprises, Inc.

William H. Peoples, Westerville, Ohio, for Frank B. Swartwout, Mary Lynn Swartwout and Malvern Enterprises, Inc.

Michael J. Johrendt, Johrendt & Cook Co. L.P.A., Columbus, Ohio, for Mercor, Inc. fka Diversified Business Ventures, Inc.

W. Locke McKenzie, Jr., Columbus, Ohio, for The Northwestern Mut. Life Ins. Co.

Stephen H. Dodd, Lucas, Pendergast, Albright, Gibson & Newman, Columbus, Ohio, for Pan–Western Life Ins. Co.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This proceeding is before the Court for the disposition of two Motions for Summary Judgment filed by the Plaintiff, Westchester Enterprises, Inc. (hereinafter "Westchester") and one of the Defendants, Mercor, Inc. fka Diversified Business Ventures, Inc. (hereinafter "Mercor"). Westchester filed an adversary proceeding against Frank and Mary Lynn Swartwout (hereinafter collectively, "the Debtors"), Malvern Enterprises, Inc., the Northwestern Mutual Life Insurance Company and Mercor. Westchester's Complaint seeks, among other matters, a declaratory judgment regarding interests in a certain life insurance policy on the life of Frank B. Swartwout, 88% of which was assigned to Westchester on May 14, 1986. Westchester also seeks a determination whether benefits due under the policy are property of the estate.

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered into in this judicial district. The disposition of this matter is a core proceeding, which the Court may hear and determine. 28 U.S.C. § 157(b)(2). The following Opinion and Order constitutes the Court's findings of fact and conclusions of law.

Westchester's Motion for Summary Judgment asserts that it is entitled to 88% of the benefits presently payable under assigned policy. Mercor likewise asserts in its Motion for Summary Judgment that, as a matter of law, it is entitled to the remaining 12% of the proceeds, by virtue of the policy assignment in its favor executed on May 14, 1986. Northwestern Mutual Life Insurance Co. (hereinafter "Northwestern"), as the insurer, is uncertain which

parties are legally entitled to receive the subject policies' proceeds; therefore, Northwestern subsequently filed a Counterclaim and Cross–Claims in interpleader against all parties-in-interest, and added Third–Party Defendants, BancOhio National Bank (hereinafter "BancOhio") and Pan–Western Life Insurance Company ("Pan–Western"). Parties-in-interest have submitted stipulations of fact and trial briefs to the Court. At the parties' request, the Court will treat all trial briefs as briefs on the Motions for Summary Judgment.

## FINDINGS OF FACT

At issue in this case are the rights of the various parties with respect to the proceeds of two life insurance policies, No. 9793358 (hereinafter "Policy No. 1") and No. 9793439 (hereinafter "Policy No. 2"), issued by Northwestern on the life of Frank B. Swartwout ("Swartwout"). The facts revealed by the record may be summarized as follows:

*Policy No. 1.* On April 28, 1986, the Debtors entered into an Agreement for the purchase of assets with Westchester to purchase three Command Performance Hair Care and Beauty Salons, along with various fixtures and equipment. The purchase of these salons and accompanying assets was arranged by Mercor, which was paid a commission for its efforts. This purchase agreement permitted the parties to enter into a separate agreement, whereby the Debtors agreed to pay $162,000 to Westchester and Mercor over a seven-year term in monthly payments based on a percentage of the salons' sales; the payments were allocated 88% to Westchester and 12% to Mercor.

On May 10, 1986, the Debtors assigned all of their right, title and interest they possessed in the Purchase Agreement to Malvern Enterprises by the execution of an Assignment and Assumption Agreement for the Purchase of Assets. Also on May 10, 1986, Malvern Enterprises executed a separate deferred Payment Agreement which essentially incorporated the same balance due ($162,000) and payment alloca-

tions (Westchester 88%; Mercor 12%) based on monthly salon sales, with any unpaid principal and interest at the end of the seven-year term to be paid by Malvern Enterprises. This assignment expressly retained the personal liability of Swartwout and Debtor for the performance of the Purchase Agreement and Deferred Payment Agreement to Westchester and Mercor.

Pursuant to Section 2(d) of the Purchase Agreement, the Debtors purchased and offered as security for their indebtedness this life insurance policy on Swartwout's life, with Westchester designated as the beneficiary of 88% of the $100,000 policy. The remaining 12% was assigned to Mercor to secure payment of their brokerage fee. Both assignments were executed by the Debtors on May 14, 1986.

Upon Malvern Enterprises' default on June 15, 1988 on the two Agreements, Westchester instituted an action in the Court of Common Pleas of Franklin County, Ohio against the Debtors and Malvern Enterprises. Westchester obtained a judgment jointly and severally against the Debtors and Malvern Enterprises on May 8, 1989, in the amount of $106,179.74 plus post-judgment interest.

Malvern Enterprises ceased payments to Mercor in July, 1988. There is presently due to Mercor the sum of $14,683.53.

On May 15, 1989, the Debtors filed a Petition for Relief under Chapter 11 relief, as did Malvern Enterprises (Case No. 2–89–0267). On June 17, 1989, Swartwout died, and the proceeds from this policy became payable.[1]

*Policy No. 2.* Policy No. 2 was issued by Northwestern on January 27, 1986, and was a term life insurance policy in the amount of $200,000 on the life of Swartwout, with the owner and direct beneficiary designated as Franklin Enterprises, Inc. Through a series of transfers of ownership, changes in beneficiaries and alterations in policy coverages, Policy No. 2 was ultimately reduced to a $100,000 term policy on April 25, 1988, with Swartwout as the

---

1. Pan–Western and BancOhio do not claim any    right to the proceeds of Policy No. 1.

designated owner and Debtor as the direct beneficiary. Simultaneously, the balance of this policy was converted into two $50,000 extraordinary whole life insurance policies, with Swartwout as the designated owner and Debtor as the direct beneficiary.

On May 13, 1986, Malvern Enterprises issued a debenture to Pan–Western in the principal amount of $115,000. The debenture was executed by Malvern Enterprises, and by the Debtors in their individual capacities. The Debtors also executed a Guaranty of Debenture, which guaranteed Malvern Enterprises' obligations as set forth in the debenture. On May 16, 1986, for purposes of securing the obligations under the Guaranty of Debenture, Swartwout executed and delivered to Pan–Western an Assignment of Policy No. 2. This Assignment was received and filed by Northwestern on May 27, 1986.

On or about March 1, 1989, Malvern Enterprises defaulted under the debenture. Thereafter, Pan–Western sent notice to Swartwout and Malvern Enterprises, demanding payment in accordance with the terms of the debenture. The debenture required the curing of the default within fifteen (15) days, or Pan–Western could exercise its option to accelerate all amounts unpaid to be immediately due and payable. Malvern Enterprises and Swartwout failed to cure the default.

On or about May 13, 1986, BancOhio loaned Malvern Enterprises $85,000 and obtained from Malvern Enterprises a Commercial Note–Business. This indebtedness was secured by an "Assignment of Life Insurance Policy as Collateral" pertaining to Policy No. 2, executed and delivered to BancOhio on May 13, 1986. This Assignment was never sent to nor received by Northwestern. On August 29, 1986, a second Assignment of Life Insurance Policy as Collateral pertaining to Policy No. 2 was executed and delivered to BancOhio. Northwestern received and filed this Assignment on September 10, 1986.

Swartwout, Debtor and Malvern Enterprises defaulted on the Commercial Note–Business, and there is due and owing on this obligation $47,530.59, plus interest from May 15, 1989.

Upon Swartwout's death on June 17, 1989, the proceeds of Policy No. 2 and the two extraordinary whole life insurance policies became payable by Northwestern. Debtor, Pan–Western and BancOhio all claim some ownership interest in these proceeds.

In essence, Westchester, Mercor, Pan–Western and BancOhio (hereinafter collectively referred to as "Creditors"), claim that, by virtue of the pre-petition Assignments of the life insurance policies, Swartwout and debtor relinquished all their right, title and interest in the policies' proceeds and, therefore, such proceeds cannot be characterized as property of the estate. The Debtors and Malvern Enterprises claim that the subject life insurance policies are property of the bankruptcy estate, and that their creditors have no ownership interest in the proceeds of said policies, but rather these creditors hold merely an unperfected security interest in the life insurance policies.

## CONCLUSIONS OF LAW

The standard of review of motions for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which is made applicable to proceedings in bankruptcy by virtue of Bankruptcy Rule 7056. Rule 56(c) states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Recognizing that the moving party has the burden of demonstrating the absence of dispute as to any material fact, the United States Supreme Court observed in the case of *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962) that:

> On summary judgment, the inferences to be drawn from the underlying facts con-

tained in such materials [pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits] must be viewed in the light most favorable to the party opposing the motion.

Professor James W. Moore has articulated the burden the proponent of a motion for summary judgment must meet:

Courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitles him to judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden, the movant must make a showing that is quite clear with the truth is and that excludes any real doubt as to the existence of any genuine issue of material fact.

6 MOORE'S FEDERAL PRACTICE 56.-15[3] (2d ed. 1988).

The dispositive issue before the Court concerns the determination of the interests of Swartwout, Debtor and Creditors as the insured, the beneficiary and the assignees, respectively, in the subject life insurance proceeds, and the legal effect or impact of the assignments on those interests.

The scope of the term "property of the bankruptcy estate" is set forth in 11 U.S.C. § 541. Property of the estate, as defined by this provision, is comprised of all legal and equitable interests of the debtor in property, wherever located, as of the commencement of the case, or acquired by the debtor within 180 days of the filing for bankruptcy relief. 11 U.S.C. § 541(a). At the commencement of this Chapter 11, the subject policies were in force, and reflected Swartwout as the insured and Debtor as the designated beneficiary. It is uncontested that prior to the commencement of the case [2], these policies were validly assigned to the designated creditors of Swartwout, Debtor and Malvern Enterprises.

The briefs of all parties rely on the Third Circuit decision of *Estate of Lellock v. The Prudential Ins. Co. of America*, 811 F.2d 186 (3rd Cir.1987) to support their respective arguments relative to the property classification of the policies' proceeds. *Lellock* involved the pre-petition assignment of life insurance proceeds to secure an indebtedness owed to the Small Business Administration ("SBA"). The assignment in favor of the SBA transferred all the debtor's rights, benefits and advantages derived from the policy, even though the assignment was solely for collateral security. *Id.* at 187. The debtor filed for relief under Chapter 7 more than two years after the debtor's assignment to its creditor, and the debtor subsequently died after receiving his discharge. Both the debtor's widow and the SBA claimed the $165,000 insurance proceeds.

The *Lellock* court observed that generally, a debtor's interest in an unmatured life insurance policy is property of the estate, even though it has no cash surrender value and is otherwise contingent, and therefore, a lien could attach to the unmatured policy. *Id.* at 189. The court noted, however, that the pre-petition assignment transferred all of the debtor's right, title and interest in the policy. As of the date of bankruptcy, the assignee possessed the title to the policy, which constituted an interest in the policy. The court concluded that since the policy was property of the assignee, the property never passed to the debtor's bankruptcy estate. *Id.* at 190. Furthermore, because the policy was never reassigned to the debtors, they had not reacquired any interest in the policy or its proceeds. *Id.* See also, *In re Moskowitz*, 14 B.R. 677, 682 (S.D.N.Y.1981) (Medical insurance proceeds which are assigned were not property of the estate under § 541); *Redfield v. Ansbro (In re Goldberg)*, 98 B.R. 353, 358–359 (Bkrtcy.N.D.Ill.1989) (The bankruptcy estate includes only the debtor/insured's interest in the unmatured life insurance contract when the petition is filed, and excludes the payment due the nondebtor/beneficiary under the contract, as the debtor possessed neither a legal nor an equitable interest at that time; upon the debtor's

2. All assignments were executed outside the preference period of 11 U.S.C. § 547.

death, the designated beneficiary of this *unassigned* policy was entitled to the payment of the proceeds.).

The Third Circuit's holding in *Lellock* lends great insight to the instant controversy.[3] Like the debtors in *Lellock*, several years prior to filing bankruptcy, these Debtors assigned all their right, title and interest in the subject policies and any benefits to certain creditors, as evidenced by the preamble of Northwestern's standard Assignment of Life Insurance Policy:

> ... the undersigned hereby assign, transfer and set over to ... the Assignee ... Policy No. _____ ... upon the life of Frank Swartwout ... and *all claims,* options, privileges, *rights, title and interest* thereon and thereunder.... (Emphasis added.)

The Assignment sets forth the specific rights of the designated assignee, which include, but are not limited to that set forth in Paragraph B(1):

> The *sole right* to collect from the insurer the net proceeds of the policy when it becomes a claim by death or maturity. (Emphasis added.)[4]

Ohio courts recognize the importance and effect of such language as illustrated by the case of *Doyle v. Gifford,* 28 Ohio L.Abs. 602 (Ct.App.1938). In a case very similar to the instant case, the *Doyle* court held that an assignment of the rights of the beneficiary together with those of the insured effectuated a change of the beneficiary as much as if a formal substitution of beneficiary had been executed. *Id.* at 605.

Because both the insured, Swartwout, and the beneficiary, Mrs. Swartwout, transferred their interests in the insurance policies and proceeds to their designated creditors, neither at the commencement of the bankruptcy nor within 180 days thereafter did the subject policies or the resulting proceeds become part of the bankruptcy estate. By virtue of the pre-petition assignments of their interests and failure to reacquire such interests from their Creditors, the Debtors retained no interest in the insurance policies which could pass to the bankruptcy estate under § 541.[5]

Even assuming that the Assignment effectuated less than a complete transfer, rendering the Creditors' interest merely that of a. lien on the benefits, the result would be the same.

The longstanding and well-settled rule establishes that, under an ordinary life insurance policy which contains no reservation of right in the insured to terminate or modify the beneficiary's interest, the beneficiary acquires at the moment of issuance, a vested right in the policy and its proceeds, which cannot be altered by any post-execution act of the insured. *Mutual Beneficial Life Ins. Co. v. Swett,* 222 F. 200, 204 (6th Cir.1915). However, where the insured, under the terms of the policy, reserves the right, without the consent of the named beneficiary, to change the appointee, the beneficiary acquires only an expectancy, rather than a vested interest during the life of the insured. *Id.* at 204.

---

3. In the trial brief filed on behalf of the Debtors and Malvern, the parties attempt to distinguish *Lellock* from the present controversy on the grounds that *Lellock* involved a Chapter 7 proceeding and the insured died more than two years after his discharge. These distinctions are insignificant. First, the parameters of § 541 apply to Chapter 11 proceedings as well as Chapter 7 bankruptcies. Second, the pre-petition assignment by the insured controls the status of the proceeds as estate property, rather than the date of the insured's death.

4. The assignments explicitly protect Mrs. Swartwout's right to any surplus proceeds under Paragraph E(1), which states:

> The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed.

5. Swartwout, Debtor and Malvern's reliance on *In the Matter of B. Siegel Co.,* 51 B.R. 159 (Bkrtcy.E.D.Mich.1985), is not only misplaced, but baffles this Court, as that case bears no remote similarity to the instant case. *Siegel Co.* exclusively involved an insurer's post-petition cancellation of an insurance policy and the application of § 365(e) of the Bankruptcy Code.

In *Swett*, the policy reserved to the insured the right to change the beneficiary; thus, until a right of action accrued (i.e. death of the insured), the policy conferred no transferable vested interest on the insured's spouse as the designated beneficiary. *Id.* at 205. Furthermore, as owner of the policy, the insured assigned all his right, title and interest in the policy to a creditor bank for purposes of pledging the policies as collateral security for bank notes. The policy recognized that ownership could be acquired by assignment, and by such an assignment, the bank became the owner to the extent necessary to satisfy the insured's indebtedness from the proceeds. *Id.* at 205. The court held that the assignment in favor of the bank was not the equivalent of a change in the beneficiary; however, the assignment of the insured's right, title and interest in the policy transferred to the assignee a right superior to that of the beneficiary. *Id.* at 205–206.

Lending further clarification to the relative priority interest among the assignees and the named beneficiary, the Supreme Court of Ohio held in *Katz v. Ohio Nat'l Bank*, 127 Ohio St. 531, 191 N.E. 782 (1934) (syllabus of court):

3. The assignment of a life insurance policy by the insured and the beneficiary then named therein, as collateral security for a debt, is not equivalent to the designation of another beneficiary, and *when the insured dies the beneficiary named takes a vested interest in the entire proceeds of the policy, subject to the lien of the assignee.*

■ In the instant matter, pursuant to Paragraphs 2.1 and 8.2 of the Policy and Paragraph C(2) of the Assignment, Swartwout retained and reserved the right to change the designation of the benefi-

ciary. Thus, based on the holdings of *Swett* and *Katz*, even under the lien theory, the Debtors possessed merely a beneficiary's expectancy interest in the subject policies, which vested upon Swartwout's death; however, that vested interest is subordinate to the liens created in favor of the Assignees: Westchester, Mercor, Pan Western and BancOhio, and the Debtors still would be unable to use the funds pursuant to § 363(c)(2) of the Bankruptcy Code. Clearly, the funds constitute cash collateral under § 363(a), and as such, the Debtors may not use the funds absent consent of the Creditors or Order of this Court. Apparently, the Creditors have not consented to use of the funds, and there has been no application to the Court for an order authorizing use of cash collateral. Of course, the Court can only enter such an order with provision for adequate protection to the Creditors, no proposal for which has been made by the Debtors.[6]

■ As BancOhio correctly summarized in its trial brief, the assignment of the life insurance policies operates to contractually bind the policy owner, the creditor and the insurer to perform pursuant to the agreement. The Debtors both assigned their interests in and under the policy to secure certain loan obligations owed to the Creditors. Upon the Creditors' respective notification and filing of the Assignments with the insurer, Northwestern, the parties became bound by the Assignment agreements. Thus, the parties-in-interest mutually assented to Northwestern's disbursement of the life insurance proceeds to the Creditors upon the death of the insured.

■ Finally, as to Policy No. 2, BancOhio and Pan Western both assert that they are entitled to the benefits payable under that Policy. BancOhio relies on its

---

**6.** The Debtors and Malvern also assert that the Creditors possess unperfected security interests in the subject policies and proceeds. The Debtors simply made this bald statement without elaboration or citation of authority. The Debtors seemingly imply that it is incumbent upon the creditors to take such additional measures as necessary to perfect their respective interests under the Ohio Commercial Code. This contention is without merit. The Ohio Revised Code

specifically provides that transactions which transfer an interest or claim in or under any policy of insurance are outside the scope of Chapter 1309 of the Ohio Revised Code, except, for example, to the extent that the statute establishes priorities among conflicting security interest in the same collateral. Ohio Rev.Code Ann. § 1309.04(F) (Anderson Supp.1989). See also *In re Long Chevrolet, Inc.*, 79 B.R. 759 (N.D.Ill.1987).

Assignment executed May 13, 1986, which was prior to the execution date of Pan-Western's Assignment. Pan-Western relies on Paragraph 2.3 of each Policy, which provides:

> The owner may assign this policy as collateral security.... The company will not be responsible to an assignee for any payment or other action taken by the company before receipt of the assignment in writing at its home office.

Clearly, this is no more than a disclaimer of liability in the event that the Company is unaware of assignments executed by the Debtor. Furthermore, the Assignment itself contains nothing more than a suggestion: On the reverse side of the Assignment under "INSTRUCTIONS", the Assignment states that, "the original and duplicate assignment, each executed individually, *should* be sent to the home office.... (Emphasis added.)" Nothing in the Assignment or the Policy requires anything more than execution of the Assignment in order for the assignee to obtain a right to the proceeds, nor have the parties cited any statutory or case law requiring more. To the contrary, the only Ohio case located indicates otherwise. The court in *Pennsylvania Mut. Life Ins. Co. v. Mecklenborg,* 16 Ohio L.Abs. 162 (Ct.App.1933) held an executed but undelivered assignment of an insurance policy was valid, even though copies of the assignment were not delivered to the insurer as required by the policy. Thus, BancOhio is entitled to the proceeds of the insurance policies until paid in full, after which Pan-Western may collect the balance of the proceeds until paid in full. Any remaining proceeds must be disbursed to Mrs. Swartwout.

In accordance with the foregoing it is

Ordered and Adjudged that the Motions for Summary Judgment by Westchester Enterprises, Inc. and Mercor, Inc. are granted. Westchester Enterprises, Inc. and Mercor, Inc. are entitled to the proceeds under Policy No. 1. It is further

Ordered and Adjudged that BancOhio National Bank and Pan-Western Life Insurance Company are entitled to judgment in their favor and are entitled to the proceeds under Policy No. 2, as their interests may appear.

A separate Final Judgment shall be entered in accordance with the foregoing.

IT IS SO ORDERED.