In the Matter of the CELOTEX CORPORATION, et al., Debtors.

The CELOTEX CORPORATION, et al., Plaintiffs,

v.

AIU INSURANCE COMPANY, et al., Defendants.

Bankruptcy Nos. 90–10016–8B1 and 90–10017–8B1. Adv. No. 91–40.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 1, 1993.

Charles P. Schropp, Mark P. Buell, Schropp, Buell & Elligett, Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Mark H. Kolman, Karen L. Bush, Mark D. Silverschotz, Anderson Kill Olick & Oshinsky, for plaintiffs.

Sara Kistler, Asst. U.S. Trustee,

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., for Creditors Committee of Unsecured Creditors.

William Knight Zewadski, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, for Asbestos Health Claimants Committee.

James W. Greene, William E. Nowakowski, Bromley, Greene & Walsh, for Columbia Cas. Co., Employers Ins. of Wausau, Federal Ins. Co., Protective Nat. Ins. Co.

John A. Yanchunis, Blasingame, Forisz and Smiljanich, P.A., for Continental Cas. Co., Citadel Gen. Assur. Co., Columbia Cas. Co., American Re–Insurance Co., Eric Reinsurance Co., Zurich American Ins. Co.

John E. Peer, Long & Levit, for Continental Cas. Co., Transp. Ins. Co.

Katherine E. Rakowsky, Philip C. Stahl, Iving C. Faber, Margaret B. Jones, Grippo & Eldon, for American Ins. Co., Nat. Sur. Co.

Rolf E. Gilbertson, Paul L. Gingras, Zelle & Larson, for Employers Ins. of Wausau.

Ronald L. Cohen, Seward & Kissell, for Employers Ins. Co. of Wausau.

Mary A. Lau, Robert J. Asti, Lau, Lane, Pieper & Asti, P.A., for Employers Ins. Co. of Wausau.

George A. Vaka, Russell S. Buhite, Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., for North Star Reinsurance Co.

Roger E. Warin, Daniel C. Sauls, John A. Flyger, Stoptoe & Johnson, for Highlands Ins. Co., Old Republic Ins. Co., St. Paul Surplus Lines Ins. Co.

James P. Schaller, Christine A. Nykiel, Jackson & Campbell, for American Home Assur. Co., AIU Ins. Co., Granite State Ins. Co., Lexington Ins. Co., Nat. Union Fire Ins. Co. of Pittsburgh, PA.

Thomas B. Mimms, Jr., MacFarlane Ferguson, for American Home Assur. Co., AIU Ins. Co., Highlands Ins. Co., Lexington Ins. Co., Old Republic Ins. Co., Granite State Ins. Co., Nat. Union Fire Ins. Co. of Pittsburgh, PA, Employers Mut. Cas. Co., American Ins. Co., Nat. Sur. Co., St. Paul Surplus Lines Ins. Co.

Elizabeth B. Sandza, Cynthia T. Andreason, Leboeuf, Lamb, Lieby & MacRae, for Gibraltar Ins. Co., Hudson Ins. Co.

David C. McLauchlan, Lord Bissell & Brook, Deborah M. Paris, Paris & Hanna, P.A., for Lloyds of London.

Jack Willis, Allianz Underwriters Ins. Co., for Allianz Underwriters Ins. Co.

Lynn Bregman, David Donovan, John Siddeek, Wilmer, Cutler & Pickering, for North American and California Union Ins. Co.

Meryl R. Lieberman, Daniel W. Morrison, III, Wilson, Elser, Moskowitz, Edelman & Dicker, for Gen. Acc. Fire & Life Assur. Co.

William J. Bowman, Hogan & Hartson, for First State Ins. Co., Hartford Indem. Co., Twin City Ins. Co.

Robert H. Berkes, Barbara Hodous, Bodkin, McCarthy, Sargent & Smith, for First State Ins. Co., Hartford Indem. Co., Twin City Fire Ins. Co.

W. Gray Dunlap, Jr., Judith W. Simmons, De La Parte & Gilbert, for Hartford Indem. Co., Twin City Fire Ins. Co., First State Ins. Co.

Robert J. Bates, Jr., Maryann C. Hayes, Pope & John, Ltd., for Eric Reinsurance Co., American Re–Insurance Co., Zurich Ins. Co.

Virginia M. Vermillion, David Schroeder, Gleason, McGuire & Shreffler, for Employers Mut. Cas. Co. and Allstate Ins. Co.

Wilson M. Brown, III, Lawrence A. Nathanson, Drinker Biddle & Reath, for American Motorists Ins. Co. and Lumbermens Mut. Cas. Co.

Elizabeth G. Repaal, Harris, Barrett, Mann & Dew, for Allstate Ins. Co.

Gregory J. Willis, Walton, Lantaff, Schroeder & Carson, for Florida Ins. Guar. Co.

James E. Rocap, III, Cathy J. Burdette, Michael J. Barta, Miller, Cassidy, Larroca & Lewin, Washington, DC, for Aetna Cas. & Sur. Co.

Mark M. Schabacker, Arnold, Morris, Frank & Schabacker, P.A., Tampa, FL, for Aetna Cas. & Sur. Co.

Rick Dalan, St. Petersburg, FL, for Royal Indem. Co.

Edward M. Waller, Jr., Fowler White Gillen Boggs, Villareal and Banker, P.A., Tampa, FL, for American Motorists Ins. Co.

Louis Schulman, Butler Burnette & Pappas, Tampa, FL, for Continental Ins. Co., International Ins. Co., U.S. Fire Ins. Co., The American Centennial Ins. Co.

Robert J. Kelly, McElroy Deutsch & Ulvaney, Morristown, NJ, for Intern. Ins. Co. and U.S. Fire Ins. Co.

Susan B. Morrison, Morrison, Morrison & Gregory, P.A., Tampa, FL, Thomas J. Quinn, William J. Cleary, Mendes & Mount, New York City, for Barrett and London Market Companies.

William E. McGrath, Jr., Golden, Rothschild, Spagnola & Difazio, Somerville, NJ, Michael M. Ingram, John A.C. Guyton, III, Alley & Ingram, Tampa, FL, for Transport Ins. Co.

Michael F. Aylward, Morrison, Mahoney & Miller, Boston, MA, Benjamin H. Hill, III, Dennis P. Waggoner, Hill, Ward & Henderson, Tampa, FL, for Transamerica Premier Ins. Co.

Warren D. Hamann, James F. Asher, Kimbrell & Hamann, Miami, FL, Michael Gallagher, German, Gallagher & Murtagh, Philadelphia, PA, for Stonewall Ins. Co.

## ORDER ON MOTIONS TO DETERMINE CORE STATUS OF THIS ADVERSARY PROCEEDING

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on to be heard upon various Defendants' motions to determine whether this proceeding is a core proceeding (28 U.S.C. § 157). Debtor has filed a five-count complaint seeking, in the main, declaratory relief under 28 U.S.C. §§ 2201 and 2202. Counts I, II, and III seek a declaration that under numerous insurance policies Defendants owe Debtor current duties to defend and indemnify Debtor against existing or anticipated claims stemming from asbestos-related property damage, environmental damage, and asbestos-related personal injury. Counts IV and V seek declaratory relief with respect to the Wellington Agreement, a major agreement between Debtor and various Defendants. Counts IV and V will not be considered herein because this Court has determined most of those issues on motions for summary judgment.[1] Finally, there is a prayer for interest, extra-contractual damages, attorney's fees and other relief. The Court, at this point, is uncertain as to what extra-contractual damages are sought since there are no allegations, but merely a prayer for relief. Further, this Court, in its order denying Defendants' motions for a trial by jury, found Debtor's complaint seeks only a declaration of rights and not money damages. The issue herein is basic: Whether this proceeding is a core proceeding. 28 U.S.C. § 157.

## JURISDICTION

The Public Rights Doctrine enunciated in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 15 L.Ed. 372 (1856), is not a necessary determinant in the core/non-core inquiry. That doctrine is generally a theory of acquired constitutional jurisdiction, where Congress seeks to entrust non-Article III courts with jurisdiction which would otherwise be solely within the domain of Article III courts. There is no need to reiterate the entire decisional maze associated with the Public Rights Doctrine since it is subsumed in bankruptcy jurisdiction established in 28 U.S.C. § 1334.[2] In *Northern Pipeline*

---

1. This Court has ruled on a number of motions for summary judgment which are, in the main, in favor of Defendants. At this time it is the Court's understanding that Defendants do not challenge the jurisdiction of the Court to rule in their favor.

2. In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69, 102 S.Ct. 2858, 2870, 73 L.Ed.2d 598 (1982), the Supreme Court stated "[t]he distinction between public rights and private rights has not been definitively explained in our precedents. [Footnote omitted.] Nor is it necessary to do so in the present case, for it suffices to observe that a matter of public rights must at a minimum arise 'between the government and others.'" Moreover, the Public Rights Doctrine has not been definitively explained by the Supreme Court in cases subsequent to *Marathon* nor by the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Nonetheless, if the tea leaves are to be read (*Pearson v. United States (In re Pearson)*, 917 F.2d 1215, 1216 (9th Cir.1990), *cert. denied*, ──── U.S. ────, 112 S.Ct. 1291, 117 L.Ed.2d 514 (1992)), this Court views the application of the Public Rights Doctrine as fully absorbed

*Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the plurality when speaking of the Public Rights Doctrine utilized the term "matters arising" and later used the language "related to." *Marathon,* 458 U.S. at 67 and 76, 102 S.Ct. at 2869 and 2874. Using those particular terms as benchmarks to review the language of 28 U.S.C. § 1334, it is clear from *Marathon* and its progeny [3] that in drafting bankruptcy jurisdiction Congress sought to maintain a broad jurisdictional arena for the district court with respect to bankruptcy matters. *Marathon,* 458 U.S. at 64, n. 14, 102 S.Ct. at 2867 & n. 14. The district court was then authorized to refer [4] to the bankruptcy court all cases and proceedings, and finally, a *Marathon* safety net was created which requires a determination as to whether a proceeding before the bankruptcy court is "core," this latter term also being used by the plurality in *Marathon,* 458 U.S. at 70–71, 102 S.Ct. at 2871–72. Thus, the constitutional infirmity envisioned in *Marathon* by way of the Public Rights Doctrine is now encapsulated solely within the non-core sector.

 Simply put, the institutional inquiry as to bankruptcy jurisdiction [5] is a basic question of whether the matter is "related to" the bankruptcy case. If the matter is "arising under" or "arising in" Title 11, it most assuredly has to be "related to" the case because the definition of "related to" is so inclusive. In *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), the court said, "[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."* (Emphasis in original.) Conversely, if the matter is not "related to" the bankruptcy case, then clearly it cannot be "arising under" or "arising in" Title 11. Thus, the bankruptcy court would have no jurisdiction, and the core inquiry would be immaterial. Ultimately, once there is a determination the matter is "related to" the bankruptcy case, the bankruptcy court has subject matter

into the elements of 28 U.S.C. § 1334 respecting bankruptcy jurisdiction and 28 U.S.C. § 157 respecting core proceedings. Otherwise, a strict rendering of the Public Rights Doctrine juxtaposed to present bankruptcy law would force the conclusion that Congress has once again been unable to create a constitutional bankruptcy court. There is no doubt that if the bankruptcy court is only constitutional if its jurisdiction is limited to actions between the government and others, then a significant number of issues that come before this Court every day do not meet the test. As explained further in this opinion, finding this adversary proceeding core does not violate the Public Rights Doctrine.

**3.** *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). *See also Freytag v. Comm'r,* —— U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).

**4.** 28 U.S.C. § 157(a). This case, as well as other bankruptcy cases, has been referred to this Court by the U.S. District Court for the Middle District of Florida pursuant to the Order of General Reference entered July 11, 1984.

**5.** It should be remembered that jurisdiction over bankruptcy is initially in the district court.

Any core/non-core analysis is immaterial to the district court sitting in bankruptcy because the district court can make final determinations of core as well as non-core matters. The only issue initially before the district court sitting in bankruptcy is whether the matter is "related to" the bankruptcy in the jurisdictional context. If the matter is within the district court's "related to" jurisdiction, it has authority to hear the entire bankruptcy matter. If a matter were not "related to" the bankruptcy, then the district court's jurisdiction would have to lie in some other form of federal jurisdiction.

If the district court refers the matter to the bankruptcy court, which is usually an automatic and universal referral, then the bankruptcy court's jurisdiction must be the same as the district court's except as to statutory limitations. The non-core issue arises only upon the referral to the bankruptcy court.

Jurisdictional limitations are specially set out with respect to personal injury and wrongful death claims. 28 U.S.C. §§ 157(b)(2)(B), 157(b)(2)(O), and 157(b)(5); *see also* 28 U.S.C. § 157(d); *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 830–831 (5th Cir.1993). But even there, there is subject matter jurisdiction for relief from stay and in order to provide for such claims in a plan of reorganization. *See In re Chateaugay Corp.,* 146 B.R. 339 (S.D.N.Y.1992); *In re Standard Insulations, Inc.,* 138 B.R. 947 (Bankr.W.D.Mo.1992).

jurisdiction and the inquiry immediately proceeds to the question of whether the matter is core.[6] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987); *accord Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 n. 16 (11th Cir.1990).

## CORE ANALYSIS

The inquiry into the core/non-core continuum is broader than the single analysis of whether the government is a party, as suggested by the Public Rights Doctrine. Assuming, *arguendo*, any inquiry into core requires us to ascertain its relation to the Public Rights Doctrine, the inquiry would proceed through all three levels set forth in 28 U.S.C. § 157. The first two levels of "arising under" and "arising in" Title 11 involve public rights.[7] Utilization of the bankruptcy system by a debtor and its creditors, all of whom are subject to the reorganization process developed by Congress, necessarily implicates public rights and is therefore core. As the Supreme Court said in *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871, "the restructuring of debtor-creditor relations ... may well be a 'public right.' " Conceptually, this Court holds it is, and thus the Chapter 11 reorganization process in this bankruptcy case is core. Further, logic suggests bankruptcy reorganization could only "arise under" or "arise in" Title 11. 28 U.S.C. § 157(b)(2)(L); *see also Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 56 n. 11, 109 S.Ct. 2782, 2797–98 n. 11, 106 L.Ed.2d 26 (1989); *Ben Cooper, Inc. v. Insurance Co. of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1400 (2d Cir.), *vacated and remanded*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *on remand*, 924 F.2d 36 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); *In re Standard Insulations, Inc.*, 138 B.R. 947, 951–952 (Bankr. W.D.Mo.1992).

**6.** The determination of core is a core matter (28 U.S.C. § 157(b)(3)), as is the determination of jurisdiction. *Gardner v. United States (In re Gardner)*, 913 F.2d 1515 (10th Cir.1990); *Pension Benefit Guar. Corp. v. Continental Airlines (In re Continental Airlines)*, 138 B.R. 442 (D.Del. 1992).

**7.** Matters which "arise under" Title 11 are predicated on a right created by a provision of Title 11. Of course, if this definition is accepted on its face, any matter dealing with property of the estate would "arise under" Title 11 and therefore be core. *Marathon* has told us that is not correct. Matters "arising in" Title 11 "are those not based on any right expressly created in Title 11, but those which nevertheless would have no existence outside the bankruptcy." *See generally Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987); *World Travel Vacation Brokers, Inc. v. Bowery Sav. Bank (In re Chargit, Inc.)*, 81 B.R. 243 (Bankr.S.D.N.Y.1987); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y.1991). These terms, as defined, are symbols of concepts to be utilized within the overall context of the bankruptcy adjudicatory process and are not mere labels to be glued to various matters without contextual analysis. *See generally Tranel v. Adams Bank & Trust Co. (In re Tranel)*, 940 F.2d 1168 (8th Cir.1991); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir.1990); *Branding Iron Motel v. Sandlian Equity, Inc. (In re Branding Iron Motel)*, 798 F.2d 396, 399 n. 3 (10th Cir.1986).

It must be recognized that the meanings of "arising under," "arising in," and "related to" are the same within the jurisdictional and core/non-core contexts. Only in the bankruptcy court core analysis do all three require a separate analysis. This Court would reject the theory that bankruptcy courts lack subject matter jurisdiction over non-core matters. *See Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993), where the court held that in some instances a bankruptcy court's determination in a non-core matter may have a preclusive effect under the doctrine of *res judicata*, "[a]lthough the bankruptcy court would not have subject matter jurisdiction over a non-core related proceeding, the action would still be within the district court's jurisdiction." Such incongruity illustrates the confusion which manifests itself when the analysis is a jurisdiction-core melange. Similarly, this Court would reject the concept that a matter may be core in nature, yet some integral parts of that core matter may be non-core. *See Atassi v. McLaren (In re McLaren)*, 983 F.2d 56 (6th Cir.1993), where the Sixth Circuit held that an exception to discharge under 11 U.S.C. § 523 would be a core matter, however, the debt which is the basis for the exception to discharge may be non-core.

The better view, of course, is found in *Wood*, 825 F.2d at 90, and *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736 (5th Cir.1993). The bankruptcy court has jurisdiction over a matter if it is "related to" Title 11, and this includes non-core matters. However, there is no authority to render a final determination in non-core matters. 28 U.S.C. § 157(c)(1).

■ The third level of the inquiry involves "related to." A proceeding involving only a private right and merely "related to" a case under Title 11 is non-core. The determination of what matters fall into this third level is the issue currently before this Court in this adversary proceeding.[8] The entire analysis is whether the facts in this proceeding place the matter within the context of the first two levels of "arising under" or "arising in" and therefore core, or within the third level of "related to" and therefore non-core.

■ Under 28 U.S.C. § 1334(d), the court has exclusive jurisdiction not only of the debtor's property, but also of the property of the estate. *Cf. Mississippi v. Louisiana,* — U.S. ——, 113 S.Ct. 549, 121 L.Ed.2d 466 (1992). Exclusive jurisdiction suggests a narrowing of any characterization of a matter being within the private rights/state cause of action/non-core arena. It must be presumed that any proceeding pertaining to the property of the estate is a core proceeding.[9] Notwithstanding the presumption of core, the presumption can be rebutted.[10]

To guide us further in this analysis, the non-exhaustive laundry list of 28 U.S.C. § 157(b) also speaks of "arising under" and "arising in" as well as speaking of property of the estate. Yet, all of us who deal on a day-to-day basis with bankruptcy cases understand full well the continual debate over the breadth of this list of core matters. *See, e.g., Duck v. Munn (In re Mankin),* 823 F.2d 1296, 1300 (9th Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 54 B.R. 562, 565 (Bankr.D.Mass. 1985), *aff'd in part and rev'd in part,* 61 B.R. 520 (D.Mass.1986), *vacated and remanded,* 815 F.2d 165 (1st Cir.1987). Other considerations are required in determining core or questioning the presumption of core when dealing with property of the estate.[11] However, the more the parameters of the matter under consideration fall within § 157(b), the more the core presumption is supported. 28 U.S.C. § 157(b)(2)(O).

■ Probably one of the most important considerations is the type of bankruptcy the debtor has filed. In a Chapter 7 case, the ability of the debtor and, for that matter, the trustee is quite limited. Chapter 7's mode is liquidation not reorganization. *National Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.),* 837 F.2d 325, 331 (8th Cir.1988). It is quite easy to see why the action by the

---

**8.** The nexus of state causes of action and private rights is most likely to arise in an adversary proceeding. If a matter is pled only by motion, application, objection, or some similar pleading found in bankruptcy, the matter will most likely be within the general bankruptcy case and therefore "arising under" or "arising in" Title 11 and thus core. The mere existence of state causes of action within the bankruptcy adjudicatory process, however, is not determinative of core. 28 U.S.C. § 157(b)(3). *See Committee of Unsecured Creditors of F S Communications Corp. v. Hyatt Greenville Corp. (In re Committee of Unsecured Creditors of F S Communications Corp.),* 760 F.2d 1194 (11th Cir.1985).

**9.** The uniqueness of property of the estate to bankruptcy cannot be discounted. Because of the primacy of property of the estate in the bankruptcy process, such a presumption should not be surprising. *See generally* Donald P. Board, *Retooling "A Bankruptcy Machine That Would Go of Itself",* 72 B.U.L.Rev. 243 (1992) (book review); 1 David G. Epstein et al., Bankruptcy, §§ 2–8 and 3–14 (1992); 4 Collier on

Bankruptcy, § 541.01 *et seq.* (King ed., 15th ed. 1992).

**10.** An issue which is self-evident in Chapter 11 cases is the presence of the debtor. If the debtor is not affected by an adversary proceeding, such a suit involving non-debtors would tend to rebut the presumption. *Allis–Chalmers Corp. v. Borg–Warner Acceptance Corp. (In re Dr. C. Huff Co.),* 44 B.R. 129 (Bankr.W.D.Ky.1984); *Westchester Enters., Inc. v. Swartwout (In re Swartwout),* 123 B.R. 794 (Bankr.S.D.Ohio 1991).

**11.** The issue before the Court does not deal with matters arising post-petition. *Ben Cooper, Inc. v. Insurance Co. of Pa. (In re Ben Cooper, Inc.),* 896 F.2d 1394 (2d Cir.), *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *on remand,* 924 F.2d 36 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); *Burns v. Massachusetts Property Ins. Underwriting Ass'n (In re Mike Burns Inn, Inc.),* 70 B.R. 863, 866 (Bankr. D.Mass.1987). If a matter arises post-petition, that factor is to be considered as part of the core analysis, possibly in conjunction with 28 U.S.C. § 959.

trustee in *Marathon* against the creditor on accounts receivable would be non-core under present bankruptcy law. While the accounts receivable were property of the estate, the only issue in that lawsuit was collection of a debt. Once the trustee obtained the funds or collected the judgment, distribution would be made to creditors after paying the appropriate costs as provided by the Code. The trustee's acts were purely ministerial and had very little to do with the bankruptcy estate. A similar result may obtain in a Chapter 11 case where the only purpose of the adversary proceeding on a suit for accounts receivable is the collection of money followed by a general distribution to creditors. Without more, the presumption of core based solely upon the accounts receivable as property of the estate pales. However, where the action brought in a Chapter 11 case by the debtor-in-possession is a declaration of rights and not a mere state contract action, then the presumption of core continues. *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553 (1st Cir.1986). The presumption is even stronger when the declaration of rights is coupled in a material way with the reorganization of the debtor. Even in *Marathon*, the Court stated "[b]ut the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a 'public right,' but the latter obviously is not." *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871; *see also* 28 U.S.C. 157(b)(3). Therefore, some nexus between the matter and the reorganizational process again encourages the presumption of core.

■ The debtor/creditor relationship is another part of the inquiry which goes to the presumption of core predicated on property of the estate. Failure of a party to file a proof of claim does not *ipso facto* make any action against that party a non-core matter. Clearly, if the debtor brought an action against its mortgagee to determine the extent and validity of the lien, that would be a core action notwithstanding the fact that the mortgagee did not file a proof of claim. 28 U.S.C. § 157(b)(2)(K). The question here is whether the party has a claim or could be a creditor, not whether the party filed or had the ability to file a proof of claim. Further, the concept of claim is not only broadly interpreted, but includes claims against property of the debtor. 11 U.S.C. § 102(2).

## DAVIS, PARKLANE, AND LEMCO GYPSUM INQUIRY

All parties have placed substantial reliance on the triad of *Gower v. Farmers Home Administration (In re Davis)*, 899 F.2d 1136 (11th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *Parklane Hosiery Co. v. Parklane/Atlanta Venture (In re Parklane/Atlanta Joint Venture)*, 927 F.2d 532 (11th Cir.1991); and *Lemco Gypsum*, 910 F.2d at 784. Although the parties allege these three decisions are dispositive of the core issue, those decisions provide only an incomplete foundation for any analysis of the subject.

In *Davis*, the Eleventh Circuit determined a bankruptcy court, although having jurisdiction to hear the underlying avoidance action, had no jurisdiction to award attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, because the bankruptcy court is not a "court of the United States." Clearly, in *Davis* the bankruptcy court had jurisdiction over the underlying case and proceeding, and the avoidance action would be core. 28 U.S.C. §§ 157(b)(2)(F) and (O); 11 U.S.C. § 510(c). EAJA, not the core/non-core dichotomy, was the determining factor in *Davis*.

Subsequently, in *Internal Revenue Service v. Brickell Investment Corp. (In re Brickell Investment Corp.)*, 922 F.2d 696 (11th Cir.1991), the Eleventh Circuit revisited the bankruptcy court's jurisdiction under a similar attorney's fees statute (26 U.S.C. § 7430) and distinguished *Davis*. The Eleventh Circuit found a distinction between Chapter 7 cases and Chapter 11 cases as well as the proceedings within those cases. While in *Davis* the Chapter 7 trustee was not a party eligible under

EAJA to seek attorney's fees, a Chapter 11 debtor-in-possession is such a party. But, more importantly, in *Davis* and *Brickell Investment Corp.* core was not the determining factor. In *Brickell Investment Corp.*, where the debtor-in-possession sought turnover of property of the estate, there was no inquiry into the core/non-core analysis: "Although debtors' counsel presents a persuasive argument as to why a request for attorney's fees as a result of a core proceeding should not be the basis of a separate contested matter, we are bound by the reasoning of this Circuit's earlier decision in *Davis* and must hold that an application for attorney's fees under 26 U.S.C. § 7430 is a non-core proceeding."[12] *Brickell Inv. Corp.*, 922 F.2d at 701. This Court finds no solid anchorage in *Davis* or *Brickell Investment Corp.* for a determination of the core/non-core spectrum.

The same result is reached in *Parklane.* The Eleventh Circuit held the bankruptcy court had no jurisdiction to enter a nonappealable order to dismiss under § 305 of the Bankruptcy Code. As noted by the Eleventh Circuit in *Goerg v. Parungao (In re Goerg),* 930 F.2d 1563, 1566 (11th Cir. 1991), the issue in *Parklane* was resolved by an amendment to 11 U.S.C. § 305(c). Surely, there could be no core/non-core concern where the jurisdictional problem is resolved by a mere change in statutory language beyond that suggested under 28 U.S.C. §§ 157 or 1334.

Nor does *Lemco Gypsum* provide any solace. There, the Eleventh Circuit considered whether the bankruptcy court could retain jurisdiction over a dispute between the debtor's ex-landlord and the purchaser of the debtor's realty. The inquiry there focused on the "related to" jurisdiction of the bankruptcy court. *See* 28 U.S.C. § 1334. As stated earlier, the "related to" inquiry is certainly the outer limit of any jurisdictional parameter of the bankruptcy court and would clearly be a threshold in-

quiry. Jurisdiction is not the concern here as jurisdiction in this adversary proceeding was long ago disposed of as being "related to" the bankruptcy case. Further, *Lemco Gypsum* dealt with facts alien to this proceeding: no property of the estate was involved because the property had been sold; the dispute involved solely non-debtors; and core/non-core was not considered.

Indeed, any court could spend a substantial portion of its time analyzing and re-analyzing core/non-core and its "related to" conundrum. Interesting inquiries could be made into the distinction between the definition of core in 28 U.S.C. § 157 and the delineation of jurisdiction in 28 U.S.C. § 1334. One could debate the difference between "arising under," "arising in," or "related to" a case under Title 11. The analysis in this adversary proceeding, however, does not have to proceed down such sonorous lines. The inquiry is a straightforward analysis.

## CONCLUSION

■ From extensive review of bankruptcy decisions concerning insurance policies and their proceeds, it appears conclusive that Debtor's policies and proceeds, especially considering their intended use to fund the major class of Debtor's claimants, are property of the estate under § 541 of the Bankruptcy Code. *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). This determination is reinforced because the insurance coverage dispute is directly related to policy proceeds which Debtor purchased to indemnify itself against claimants who are now the major concern of any reorganization plan. Similarly, these claimants will be the direct beneficiaries of these policies under the normal course of indemnification of this reorganizing Debtor.

---

**12.** *Contra O'Connor v. United States Dep't of Energy,* 942 F.2d 771 (10th Cir.1991). The precedent followed by the Eleventh Circuit in *Davis* and *Brickell Investment Corp.* was pre-*Marathon: Bowen v. Commissioner,* 706 F.2d 1087 (11th Cir.1983). This whole question of wheth-

er or not a bankruptcy court is "a court of the United States" may be purely academic in light of the Supreme Court's decision in *Freytag v. Commissioner,* — U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).

No great leap is required to conclude the determination of the extent of Debtor's rights under these policies is equally within the context of § 541, i.e., property of the estate. *St. Clare's Hosp. & Health Ctr. v. Insurance Co. of N. Am. (In re St. Clare's Hosp. & Health Ctr.),* 934 F.2d 15 (2d Cir.1991); *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 837 F.2d 89, 91–94 (2d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). This initial finding is no different than a Court's determination of Debtor's rights under any contract, lease, or mortgage in a Chapter 11 case. Therefore, pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over this adversary proceeding. As noted by the Fifth Circuit's decision in *Wood,* 825 F.2d at 90, there is no need for an elaborate denouement of jurisdiction herein. The mere fact this adversary proceeding deals with property of the estate meets the initial *Wood/Pacor* criteria for "related to" jurisdiction. *Wood,* 825 F.2d at 90; *Pacor,* 743 F.2d at 984.

In addition, this same finding that the insurance policies are property of the estate raises the presumption this adversary proceeding is a core proceeding. This presumption is the credenda of this entire analysis.

The juxtaposition of Debtor's reorganization, *a fortiori,* which contemplates the use of insurance proceeds for distribution to asbestos-related damage claimants, the core determination of 28 U.S.C. §§ 157(b)(2)(L) and (O), and *Marathon's* emphasis on the adjustment of debtor-creditor relations places this adversary proceeding squarely within the Public Rights Doctrine rather than a mere resolution of private state rights.

This entire adjudicatory process is bound up in Debtor's seminal tenet that funding of the Chapter 11 plan through the utilization of the insurance proceeds will compensate the significant parties of interest having claims stemming from asbestos-related injury. *Indiana Lumbermens Mut. Ins. Co. v. Rusty Jones, Inc. (In re Rusty Jones, Inc.),* 124 B.R. 774, 779–781 (Bankr. N.D.Ill.1991). The insurance coverage issue is the first obstacle which must be surmounted in order to bring the plan to confirmation. This adversary proceeding is not a simple dispute about a word or phrase. Rather, it is a soritical inquiry where each determination of coverage expands or contracts not only the rights of the parties to the policies but the distribution of funds to all classes of claimants under the plan. *In re Martin,* 130 B.R. 951, 961–964 (Bankr.N.D.Iowa 1991); *cf. Standard Insulations, Inc.,* 138 B.R. at 952. Each party in interest, whether Debtor, Defendants, general creditors-at-large, or asbestos-related claimants, are all directly affected by the configuration of this insurance coverage linchpin. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 139 B.R. 785 (S.D.N.Y.1992). Although the sojourn into the law of insurance policy interpretation may be the first for this Court, other jurisdictions have extensive histories of continually seeking resolution of the problems, and the parties before this Court are no strangers to this trek.[13] Leaving aside the juridical tessera of core, a simple observation of the parameters of the debate between the parties leads to a common sense legal conclusion that resolution of the debate herein is the centripetalization of the Debtor's reorganization. In somewhat similar circumstances in *Baumgart v. Fairchild Aircraft Corp. (In re Fairchild Aircraft Corp.),* No. 90–50257C, 1990 WL 119650, at *7, 1990 Bankr. LEXIS 1770, at *24–26 (Bankr. W.D.Tex. June 15, 1990), the court noted:

> The third ground for recommending denial of the motion for remand is that the lawsuits directly involve property of the bankruptcy estate, over which the federal courts have exclusive jurisdiction. 28

---

**13.** *See generally Carey Canada, Inc. v. Columbia Cas. Co.,* 940 F.2d 1548 (D.C.Cir.1991); *Carey Canada, Inc. v. California Union Ins. Co.,* 748 F.Supp. 8 (D.D.C.1990); *Unigard Sec. Ins. Co. v. North River Ins. Co.,* 762 F.Supp. 566 (S.D.N.Y. 1991); *Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.),* 129 B.R. 710 (E. & S.D.N.Y. 1991), *vacated and remanded,* 982 F.2d 721 (2d Cir.1992).

U.S.C. § 1334(d). Circuit courts in at least five circuits, including this one, have held that insurance coverage is property of the bankruptcy estate. *See MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2d Cir.), *cert. denied*, [488 U.S. 868] 109 S.Ct. 176 [102 L.Ed.2d 145] (1988); *National Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325 (8th Cir.1988); *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553 (1st Cir.1986); *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.*, 788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)); *Minoco Group of Companies, Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Group of Companies, Ltd.)*, 799 F.2d 517 (9th Cir.1986); *In re Davis*, 730 F.2d 176 (5th Cir.1984). The incident from which these lawsuits arose is not the only claim against the insurance coverage now held by the debtor. There is here the very real prospect of multiple competing claims against a single res, not only from these multiple plaintiffs in these nineteen separate lawsuits but also from plaintiffs in other covered incidents. These claims should be adjudicated in a single forum to maximize ratable distributions and to minimize the cost of litigation. [Footnote omitted.] This court is the more appropriate forum to handle competing claims over property of a bankruptcy estate, over which this court has exclusive jurisdiction. *See* 28 U.S.C. § 1334(d).

Because the adversary proceeding against potential claimants/Defendants involves property of the estate which is an integral part of the Debtor's reorganization process and is clearly within the context of core matters set forth in 28 U.S.C. § 157(b), this adversary proceeding is a core proceeding.

Accordingly, it is

**ORDERED, ADJUDGED AND DE-CREED** that this proceeding intimately involves property of the estate of which this Court has exclusive jurisdiction. This proceeding is a core proceeding.