**In re G–I HOLDINGS, INC., Debtor.**

**G–I Holdings, Inc., successor to and formerly known as GAF Corporation and International Specialty Products, Inc., Plaintiff,**

v.

**Hartford Accident and Indemnity Co., et al., Defendants.**

Bankruptcy No. 01–30135(RG).
Adversary No. 01–3085(RG).
Civ.A. No. 01–567(WGB).

United States Bankruptcy Court,
D. New Jersey.

May 21, 2002.

McCarter & English, LLP, by Anthony Bartell, Newark, NJ, for Debtor G–I Holdings, Inc.

Melito & Adolfsen P.C., by David M. Pollack, Jersey City, NJ, for Hartford Accident and Indemnity Company.

White and Williams LLP, by Patricia B. Santelle, Philadelphia, PA, for Century Indemnity Company.

Mendes and Mount, LLP, by Kathleen B. Browne, Newark, NJ, for certain London Market Insurers and Safety National Casualty Ins. Company.

## OPINION

ROSEMARY GAMBARDELLA, Chief Bankruptcy Judge.

### MATTER BEFORE THE COURT

This matter has been referred to this Court by the Honorable William G. Bassler, U.S.D.J. for a determination of whether the instant environmental coverage action brought by G–I Holdings, Inc. (G–I or the "Debtor") against Hartford Accident and Indemnity Company ("Hartford") and other insurers (together "Defendants") is a core proceeding. The following constitutes this Court's findings of fact and conclusions of law.

### FACTS AND PROCEDURAL HISTORY

G–I is a holding company which faces potential asbestos liability as a result of its succession to GAF Corporation ("GAF"). On January 5, 2001, G–I filed a chapter 11 Bankruptcy Petition in this court.

On June 16, 1997, GAF initiated an action in the Superior Court of New Jersey, Somerset County. Debtor's br. at 3. It sought insurance coverage for more than 100 claims by state and federal governmental agencies and private parties asserted against GAF for environmental harm at various sites. Second Amended Compl. at 8. The action named numerous insurers

who were allegedly party to GAF's environmental insurance policies. The complaint sought relief in the form of:

damages ... declaratory judgment ... compensatory relief ... consequential damages and ... punitive damages resulting from defendants' breaches of their contractual obligations to defend and indemnify GAF against liabilities for various claims and losses covered by policies of insurance sold by the defendant insurers.

Second Amended Complaint ¶ 1.

All but four defendants settled with G–I and the remaining defendants filed answers to the complaint. Somerset County Superior Court Judge Robert E. Guterl [1] held nine case management conferences and issued orders concerning discovery. As the case progressed, more than fifty depositions were taken regarding three sites that have been the subject of discovery, and numerous more depositions were requested.

On January 5, 2001, G–I filed a Chapter 11 petition in the United States Bankruptcy Court for the District of New Jersey. On February 2, 2001, G–I removed the coverage action from the State Court to the Bankruptcy Court pursuant to 28 U.S.C. §§ 1452(a) and 1334 and Fed. Rule of Bankruptcy Procedure 9027. The notice of removal asserts that the coverage action is a core proceeding pursuant to 28 U.S.C 157 § (b)(2)(A) and (O). Notice of Removal ¶ 11. In their answers, defendants deny that the instant action is a core proceeding. Defendants further respond that pursuant to 28 U.S.C. § 157(c)(2), they do not consent to the entry of final orders by the bankruptcy judge.

By order dated February 7, 2001, United States District Judge William G. Bas-

1. The court notes that Judge Guterl passed away on May 26, 2001.

sler, referred the action to the Bankruptcy Court. On February 28, 2001, Hartford filed a motion asking the district court to withdraw the reference of the action to the bankruptcy court. On March 1, 2001, defendant Century Indemnity Company filed a motion in this court to remand the instant proceeding to the Superior Court of New Jersey. As stated in a letter to the court dated March 27, 2001 from Evan M. Turtz, Esq., counsel for Debtor G–I, the parties agree that the outcome of the motion to withdraw the reference will determine whether the Bankruptcy Court or the District Court will decide the motion to remand.

By order dated August 7, 2001, Judge Bassler dismissed the motion to withdraw the reference without prejudice and remanded the matter to the bankruptcy court "for a determination as to whether the proceeding is core or non-core".[2] Accordingly, this court heard oral argument on October 24, 2001 on the issue of whether the instant coverage action is a core proceeding.

### CORE PROCEEDINGS

The issue before this court is whether the instant proceeding is core or non-core. The distinction is significant in that after *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Marathon*") held the jurisdictional grant in the Bankruptcy Reform Act was too broad, Congress responded by using 28 U.S.C. § 157 to divide bankruptcy court jurisdiction into two distinct categories. *See In re Marcus*

*Hook,* 943 F.2d 261, 266 (3d Cir.1991). In "core" proceedings the Bankruptcy Court has comprehensive power and can enter appropriate orders and final judgments. *See* 28 U.S.C § 157(b)(1). In proceedings which are "non-core", but which nonetheless are "related to" a bankruptcy case under Chapter 11, the bankruptcy court may hear the proceeding. Absent the consent of all parties and referral by district court, however, the bankruptcy court must submit to the district court its proposed findings of fact and conclusions of law. *See* 28 U.S.C § 157(c)(2); (c)(1). The district court reviews *de novo* the determinations of the bankruptcy court, and enters any final orders of judgment. *Id.* A conclusion that a proceeding is non-core may therefore lend support to arguments in favor of withdrawing the reference based on judicial economy.

### APPLICABLE STANDARD

The parameters of core and non-core proceedings, however, are not defined by statute. The Fifth Circuit suggested that the phrases "arising under" and "arising in" [of § 157] are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right cre-

---

**2.** It has been established that in the instance of a motion to withdraw the reference, such as here, it is appropriate for the bankruptcy court to determine the classification of the proceeding, *See* 28 U.S.C. § 157(c)(3), and for the district court to then decide the motion to withdraw the reference. *See also,* 28 U.S.C. § 157(b)(3), *Travellers Int'l AG v. Robinson,*

982 F.2d 96, 97–98 (3d Cir.1992) (discussing bankruptcy court's determination of core/non-core in connection with a motion to withdraw the reference); *Dailey v. First Peoples Bank of Jersey,* 76 B.R. 963, 968–969 (D.N.J.1987) (stating that bankruptcy code supposes the core/non-core determination will be made by the bankruptcy court).

ated by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *see also, In re Guild and Gallery Plus, Inc. (Torkelson)*, 72 F.3d 1171, 1178 (3d Cir.1996). *Wood* thus posited that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood*, 825 F.2d at 97. In the action before it, the *Wood* court went on to find that the breach of contract action

> is not based on any right created by the federal bankruptcy law. It is based on state created rights. Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court.

*Id.* Many circuit courts of appeal have adopted the *Wood* test for classifying core and non-core proceedings. *See, e.g., Halper v. Halper*, 164 F.3d 830 n. 7 (3d Cir. 1999) (citing cases from the 6th, 7th, 8th, 9th and 10th Circuits as following this test).

Significantly, the Third Circuit has adopted the *Wood* approach. *See, e.g., Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir.1990) (analyzing under 1st 2nd and 5th Circuit approaches); *In re Marcus Hook Development Park*, 943 F.2d 261, 267 (3d Cir.1991) (holding matter satisfies *Beard's* test quoting *Wood*); *In re Guild and Gallery Plus, Inc. (Torkelson)*, 72 F.3d 1171, 1178 (3d Cir.1996) (explaining this circuit has used the *Wood* test, citing *Hook*); *CoreStates Bank v. Huls America*, 176 F.3d 187, 203–204 (3d Cir.1999) (applying *In re Guild and Gallery Plus, Inc. (Torkelson)*, 72 F.3d at 1178).

■ The Third Circuit further clarified the proper method for classifying a core proceeding in this circuit. It stated that a court should first consult the illustrative list of core proceedings at 28 U.S.C. § 157(b).[3] *See, e.g., Halper v. Halper*, 164

---

**3.** (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
28 U.S.C. § 157 (West 2002).

F.3d 830, 836 (3d Cir.1999). The court then must "apply [the 3rd Circuit's] test for a core proceeding." *Id.* The test examines whether the proceeding at issue "[1] invokes a substantive right provided by Title 11 . . . or [2] if it is a proceeding that, by its nature, could arise only in the context of a Bankruptcy Case". *See, Halper,* at 836, (quoting *Guild and Gallery,* 72 F.3d at 1178). This inquiry serves to ensure that the exercise of "core proceeding" jurisdiction by the Bankruptcy Court does not extend beyond constitutional limits as discussed in *Marathon. Id.*

The *Halper* court then reviewed each of the claims under this two-part analysis.[4] The first claim sought to avoid a signing bonus obligation by the debtor. The claim therefore fell under § 157(b)(2)(B) (allowance of claims) and § 157(b)(2)(H) (to recover fraudulent conveyances). Next applying this circuit's core test, *Halper* held the claim of necessity "arises in a bankruptcy" since it invoked the avoidance provisions of § 548. The action was, therefore, classified as a core proceeding. Similarly, a claim which sought to limit the debtor's liability on a signing bonus to $75,000 fell under § 157(b)(2)(B) (estimation of claims). That claim, likewise, satisfied this circuit's core test since it is an action which "involves 11 U.S.C. § 502(b)(7), a substantive provision of the bankruptcy code." *Id.* The remaining claims, including a declaratory judgment action on a pre-petition contract, were deemed non-core since "neither invokes a substantive provision of the Bankruptcy Code and neither is the type of claim that can only be entertained in bankruptcy" and could have been resolved in state court. These claims, however, were "related proceedings" since the outcome could conceivably affect the bankruptcy estate. *See e.g., Pacor v. Higgins,* 743

F.2d 984, 993 (3d Cir.1984) *rev'd on other grounds, see, Halper,* 164 F.3d 830 n. 8 ("[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.")

### THE INSTANT PROCEEDING

▉ The Debtor, in opposition to the motion to withdraw the reference, asserts that the instant proceeding is core under §§ 157(b)(2)(A) & (O). Assuming *arguendo* that the instant action falls within § 157(b), it must nonetheless satisfy the next step—the core test—as directed by *Halper.* The proceeding at issue is an environmental coverage action under pre-petition insurance policies. The basis for the suit is breach of contract, which is a state law cause of action. *See Bernheim v. Chubb Ins. Co. of Canada,* 160 B.R. 42, 46 (D.N.J.1993). It does not invoke a substantive right provided by title 11. The instant proceeding also need not have arisen in a chapter 11 case, and in fact, the litigation was commenced, and has been proceeding in state court for a number years prior to the filing of the bankruptcy petition. *See, e.g., Beard v. Braunstein,* 914 F.2d 434, 445 (3d Cir.1990) (finding that contract claim failed core test); *see, e.g., In re Ramex Int'l,* 91 B.R. 313 (E.D.Pa.1988)(holding a declaratory judgment action by trustee against insurer non-core under *Marathon); see, e.g., In re Eagle Enterprises,* 259 B.R. 83 (Bankr.E.D.Pa.2001)(applying *Guild and Gallery Plus (Torkelson)* to find breach of contract action non-core).

This action is also not similar to typical core proceedings. In *Guild and Gallery Plus (Torkelson),* the court looked at an action against an individual Chapter 11

---

4. The Third Circuit adopted a claim by claim approach. *Halper,* at 838–39.

trustee for alleged negligence regarding a painting. 72 F.3d at 1178. The court held that the "state law claims are not comparable to the filing of a proof of claim or raising an objection to discharge of a particular debt, the examples provided by *Wood.*" *Id.* Here, too, the environmental insurance action bears no resemblance to the examples of core proceedings listed in *Wood.* Under this circuit's test, the environmental action therefore appears to be a non-core related proceeding.

This court notes that the Third Circuit core test stands distinct from the more flexible approach adopted by the Second Circuit, and cited by the Debtor. The Second Circuit held that Congress intended for core jurisdiction to be interpreted broadly. *See, e.g., In re Ben Cooper*, 896 F.2d 1394, 1398 (2nd Cir.1990) *citing In re Arnold Print Works*, 815 F.2d 165, 168 (1st Cir.1987). Its courts have thus looked at a variety of factors in order to classify proceedings as core. Factors include whether the action was commenced after the filing of the petition, *see, e.g., In re Ben Cooper*, at 1400; what impact the outcome of the proceeding will have on the administration of bankruptcy case, *see, e.g., In re Prudential Lines*, 170 B.R. 222, 229 (S.D.N.Y.1994); and whether the party essentially believed it was dealing with the debtor as "an officer of the court", *see, e.g., Ben Cooper*, at 1399. One additional articulation has been "whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *See, In re U.S. Lines*, 197 F.3d 631, 637 (2d Cir.1999).

These considerations do not play a role under this circuit's core test. As noted above, our test looks specifically to whether the action asserts a "substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Halper* 164 F.3d at 836. Thus, the first factor, which looks at whether an action was commenced prior to the bankruptcy case, will not be dispositive. The Court does recognize, however, that although an action filed in state court prior to the petition date may not *automatically* fail this circuit's core test, most such actions will likely fall beyond our core parameters. Under our test's first option, such actions will have been commenced prior to the filing of the bankruptcy case, it is unlikely they will assert a title 11 right. Pre-petition actions will likely fail our test's second option as well, since they not only could have, but actually will have arisen outside of a bankruptcy case.

■ The other two factors used by the Second Circuit also appear irrelevant as well. While the outcome of a proceeding may bring significant sums into the estate, that expectation alone cannot define a proceeding as core. *See, e.g., Phar–Mor v. Coopers & Lybrand*, 22 F.3d 1228, n. 19 (3d Cir.1994)(explaining that breach of contract action which may bring property into estate "is precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate"); *see, e.g., In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 759 (D.N.J.1996)(holding that a possibly dramatic recovery of estate assets does not render proceeding "core" under § 157(b)(2)(*o*)). As Judge Posner stated with regard to the Eljer bankruptcy case:

Eljer's claimed right to insurance coverage is a creation of state contract law and one that could be vindicated in an ordinary breach of contract suit if Eljer were not bankrupt. The fact that it is an important right to the bankrupt-Eljer claims to be seeking $500 million in insurance coverage—is irrelevant.

*See, Matter of U.S. Brass Corp. (Eljer),* 110 F.3d 1261, 1268 (7th Cir.1997). The factor of dealing with an officer of the court, likewise appears to be of little import under the core test adopted by the Third Circuit.

Hartford offers additional support for its non-core argument based on the action having been filed pre-petition.[5] Debtor responds that under *In re Seatrain Lines,* 198 B.R. 45, 53 (S.D.N.Y.1996) an insurance coverage action filed pre-petition can be deemed core. Hartford's argument and Debtor's response are both unavailing. While dispositive in the Second Circuit, *see, e.g., In re Ben Cooper,* 896 F.2d at 1400 (departing from *Wood* to hold the timing of the dispute may render it uniquely a bankruptcy case) as noted above, the time of filing the proceeding is not conclusive under our core test. *See, e.g., Halper* 164 F.3d at 836. *Seatrain* explicitly based its ruling on *Ben Cooper* which is contrary to the Third Circuit view. *See, Seatrain,* at 53 (stating that the Second Circuit disavowed *Wood*).

Debtor further asserts that the instant proceeding is more correctly designated as postpetition. The complaint, however, seeks *inter alia,* declaratory judgment and damages for prepetition denial of coverage and breach of the insurance contracts. Second Amended Complaint ¶ 1. The debtor does not challenge the existence of some pre-petition claims in this action. *See, e.g.,* Debtor's letter dated March 7, 2002. At best, Debtor can assert that this is a proceeding that addresses both prepetition and post-petition claims. *See id. See also* April 6, 2001 Affidavit of Celeste Wills, Esq., at ¶ 2. ("Currently, Debtor, G–I Holdings, receives, on average, approximately four new environmental claims per year. I am aware that G–I Holdings has received notice of one environmental claim after G–I Holding's petition date"). The Third Circuit, however, holds that an action "involving pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising under title 11." *Beard,* 914 F.2d at 445. Debtor's letter to the court dated March 7, 2002, which attempts to bolster its arguments for core jurisdiction by citing *In re County Seat Stores,* 2002 WL 141875 (S.D.N.Y. Jan. 31, 2002) which held that the Chapter 11 trustee for the debtor's action seeking coverage under a prepetition insurance policy was a core proceeding, is likewise unavailing, as it follows the 2nd Circuit analysis which differs from our circuit's pronouncement.

Debtor attempts to compare the instant proceeding to cases that have classified various proceedings as core. The court first notes that none of the cases which support the debtor's position are controlling upon this court. Moreover, none of these cases employ our circuit's core test. Although the foregoing is more than adequate to set aside the debtor's core arguments, the court further holds that even under the case-law cited by the debtor, the instant proceeding is distinguishable.

Debtor argues that the insurance funds are a crucial asset of the estate, and therefore, the insurance coverage action is a core proceeding. It cites *Matter of Celotex Corp.,* 152 B.R. 667 (Bankr.M.D.Fla. 1993) where the coverage action was held a core proceeding because the insurance policies were assets of the estate. Debtor also cites *In re St. Clare's Hospital and Health Center,* 934 F.2d 15 (2d Cir.1991) in support of its position. In that case, the

---

**5.** *See, e.g., Donington,* at 758, *Beard,* at 444–45 (noting that post-petition actions are often more appropriately core).

Debtor brought a declaratory judgment action against its medical malpractice insurer. That court held that the action was a core proceeding but, in its *per curiam* decision, did not provide its analysis. This ruling was followed by *In re Prudential Lines,* 170 B.R. 222, 229 (S.D.N.Y.1994) where the court held that a declaratory judgment action on insurance coverage provided by debtor's liability policies with respect to asbestos-related tort claims asserted against the debtor's estate was a core proceeding.

The analysis in *Celotex* and *Prudential,* however, turned on "core" factors which are absent here. In *Celotex,* the court at length explained that the insurance policies were held by the Debtor to insure against precisely the kind of claims being asserted in the bankruptcy case, claims stemming from asbestos-related property damage, environmental damage, and asbestos-related personal injury. The funding of the plan of reorganization was to be through the proceeds of that policy. The major class of Debtor's claimants were to be the direct beneficiaries of the policies and proceeds. That court explained that the "entire adjudicatory process is bound up in the Debtor's seminal tenet that funding of the Chapter 11 plan through the utilization of the insurance proceeds will compensate the significant parties of interest having claims stemming from asbestos-related injury." *Celotex,* 152 B.R. at 676. It is clear that the *Celotex* court's holding does not necessarily apply to an important asset in a case. The insurance coverage action in *Celotex* was a core proceeding because it was determined to be the "linchpin" of the reorganization effort. *Id.*

Similarly, *In re Prudential Lines,* is inapposite to the instant action. First, the proceeding in *Prudential* was commenced well after the bankruptcy case came into existence. The plan was confirmed on Oc-

tober 4, 1990 and the adversary proceeding was brought on December 14, 1990 by the Disbursement Trustee pursuant to a Trust established under the plan to liquidate asbestos-related claims and enforce the Trust's interests under the debtor's numerous insurance policies. In the instant matter, the action was pending years prior to filing bankruptcy. Second, in that case many thousands of asbestos claims were filed and the trust sought determination of its insurance coverage for those claims. As that court detailed,

> "The fact that over seven thousand claims potentially covered under those policies have been filed against the PLI estate makes determination of coverage under those policies, and the operation of specific provisions of those policies such as the 'pay first' and deductible provisions, essential and inextricably tied to the administration of the estate."

*In re Prudential Lines,* 170 B.R. 222, 229. Here, while the proceeds of the environmental policies are surely important, the Debtor has not shown any basis on the current record for characterizing the insurance coverage as the linchpin of or as essential to the effort to reorganize this Debtor.

▮▮▮ Although this court holds this environmental action is not a core proceeding, the action obviously does "relate to" the bankruptcy case. Under the governing Third Circuit standard, a proceeding is designated as a related proceeding if it may have a "conceivable effect" on the bankruptcy case. *Pacor v. Higgins,* 743 F.2d at 984. Here, the Debtor is a plaintiff in the environmental coverage action. It seeks to force the insurers to pay for defense and indemnity of approximately 80–100 environmental claims under policies which provide tens of millions of dollars in coverage. *See,* Pl.'s Br. in Opp. at 10. As

such, the estate surely may be affected by the disposition of the proceeding.

## CONCLUSION

This court therefore holds that the instant adversary proceeding is a non-core, related matter. This matter is hereby referred back to the Honorable William G. Bassler, U.S.D.J. for a determination on the Motion to Withdraw the Reference.

An order in accordance with this Opinion shall be submitted.