**In re NEW KNIGHT, INC., Debtor.**

**New Knight, Inc., and Official Committee of Unsecured Creditors, Plaintiffs,**

**v.**

**National Wire & Metal Technologies, Inc., Defendant.**

**Bankruptcy No. 01–35085 SR.**

**Adversary No. 03–006.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 3, 2003.

David Smith, Philadelphia, PA, for Plaintiff/Debtor.

Nathaniel Metz, Philadelphia, PA, for National Wire.

Sean Lau, Lau & Associates, Reading, PA, for Plaintiff/Committee.

Derek J. Baker, Reed Smith Shaw & McClay, LLP, Philadelphia, PA, for Bryn Mawr Trust Company.

George Conway, Philadelphia, PA, Office of the U.S. Trustee.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction

Before the Court is a Motion in which the Defendant, National Wire & Metal Technologies, Inc. ("National Wire") seeks an Order which stays this adversary proceeding and directs the parties to arbitrate their dispute or, in the alternative, dismisses the lawsuit. The Motion is opposed by both the Debtor, New Knight, Inc, ("New Knight") and the Official Committee of Unsecured Creditors ("The Committee"). The issues have been briefed by the parties and oral argument was heard on March 13, 2003. For the reasons which follow, the Motion to Compel Arbitration will be granted.

### Background

The Debtor is a Pennsylvania corporation which, until shortly before the commencement of this bankruptcy case, was engaged in the business of manufacturing and distributing commercial and household floor mops and related refills. Beginning in 1995 various adverse economic conditions beset the Debtor's business, leading its owners to eventually investigate selling the business. In August 2001 a transaction was entered into with National Wire for the sale of substantially all of New Knight's assets. The terms of the sale are memorialized in an asset sale and purchase agreement dated August 27, 2001. Of significance, a substantial portion of the purchase price was to be paid to New Knight over time, based on the gradual disposition of New Knight's inventory and certain royalty payments to fall due on National Wire's future sales of New Knight products.

On October 26, 2001, New Knight commenced the instant Chapter 11 case. The case has at all times been represented to the Court as being a liquidating reorganization case, which is to say that the reorganization plan contemplated by New Knight consists essentially of its collection of the remaining monies owed to it under the asset purchase agreement and their subsequent distribution to creditors. On February 22, 2002, New Knight filed a disclosure statement and reorganization plan which embodied this concept. Beginning in July 2002, however, National Wire ceased making payments under the asset purchase agreement, apparently based *inter alia* on its contention that New Knight was in breach of certain warranties of title with respect to assets transferred under the parties' sale and purchase agreement.

New Knight nevertheless proceeded forward with steps to obtain confirmation of its reorganization plan. In this respect, New Knight filed an amended disclosure statement and plan on September 13, 2002. These were approved for dissemination to creditors by Order dated September 25, 2002. On November 15, 2002, New Knight filed a report of plan voting, indicating therein its belief that balloting upon the plan was such that confirmation under 11 U.S.C. § 1129 was warranted. A confirmation hearing had been scheduled for November 21, 2002. On November 20, 2002, however, National Wire filed an objection to confirmation of the plan asserting that the plan was unconfirmable because certain provisions in it were designed to eliminate National Wire's rights to contest its liability under the asset sale and purchase agreement in state court under a theory of recoupment. On the basis

of this objection, the confirmation hearing was postponed.

On January 3, 2003, New Knight commenced the present adversary proceeding against National Wire. The Complaint sets forth a single count by New Knight against National Wire for the latter's alleged breach of the parties' pre-petition agreement of sale. In the complaint, New Knight seeks damages equal to all sums allegedly due it under the sale and purchase agreement, together with interest and the costs and expenses associated with the delay in confirmation of its pending reorganization plan. On February 5, 2003, National Wire filed the present motion, the crux of which is that the parties' agreement contains an enforceable arbitration clause which the Court is obliged to uphold, because the matter at issue is non-core and falls only with the Court's "related to" jurisdiction. New Knight and the Committee (which has intervened as a party plaintiff in the action without objection) argue 1) that properly read the agreement provides the parties with the choice to either arbitrate or litigate any disputes; 2) that even if arbitration is the only choice available under the agreement, this Court need not direct that result because, jurisdictionally, the issue in the lawsuit is a core matter under the bankruptcy code; and 3) that even if the Court possesses only "related to" jurisdiction over this dispute, the Court nevertheless has the discretion to retain and hear the case, and that good cause exists for it to do so.[1]

The Court has carefully considered all of the questions presented, but finds New Knight's legal positions untenable. The Court will accordingly give force to the contractual arbitration clause, stay this adversary proceeding, and direct the parties to proceed to arbitration.

### Discussion

■ The Court turns first to the Plaintiffs' contention that the sale and purchase agreement provides its parties with the option to select arbitration *or* litigation. This position is predicated on an alleged ambiguity between the text of the clause entitled "Arbitration" (Paragraph 13 of the agreement) and the text of the clause entitled "Governing Law and Venue" (Paragraph 20 of the agreement). The sale and purchase agreement is attached as Exhibit "B" to the Complaint in this action. The verbatim text of the two paragraphs in question are, as follows:

13. *Arbitration:* All disputes arising between the parties to this Agreement shall be resolved in Jamestown, New York by Arbitration in accord with the Rules for Resolution of Commercial Disputes then in effect as promulgated by the American Arbitration Association. The determination of the Arbitrators shall be enforceable as Judgment upon filing of a copy thereof in the office of the Chautauqua County Clerk.

20. *Governing Law and Venue:* this Agreement shall be governed by and construed in accordance with the laws of the State of Pennsylvania with any arbitration or suit required between the par-

---

1. The Court recognizes that the core/non-core dichotomy is actually independent of the inquiry concerning the Bankruptcy Court's "jurisdiction." On the contrary, 28 U.S.C. § 157 does not provide an independent source of jurisdiction to the Bankruptcy Court apart from that granted to the District Court under 28 U.S.C. § 1334, it is only relevant to the Court's power to enter a final judgment without the consent of the parties. *In re Foundation for New Era Philanthropy,* 201 B.R. 382, 387 (Bankr.E.D.Pa.1996)(Fox, J.) Nevertheless, parties, as here, frequently refer to core versus non-core jurisdiction inadvertently or for convenience. Rather than belabor the point, the Court will for expediency adhere to the same semantic herein.

ties to be filed or determined by arbitrators convened in Jamestown, New York or in the Supreme Court of the State of New York held in and for Chautauqua County.

The Plaintiffs maintain that despite the ostensibly clear language of Paragraph 13, which directs the arbitration of disputes, Paragraph 20 either supercedes it, or renders it ambiguous such that Paragraph 13 need not be read as controlling. As a corollary, the Plaintiffs argue that National Wire was the scrivener of the Agreement, and that as such the alleged ambiguity must be resolved against it. All of this, say the Plaintiffs, compels a finding that their reading of the availability of an option under the agreement to either arbitrate or litigate must prevail. The Court rejects this proposition.

█ The Court notes at the outset that there is no evidence in the record before it to either confirm or refute the Plaintiff's suggestion that National Wire is the author of the sale and purchase agreement. The agreement on its face appears to have been the result of arm's length negotiation with each side represented by counsel. Nevertheless, assuming for purposes of discussion that National Wire in fact authored the agreement, the argument that the agreement is ambiguous overstates the case. In the first place, the heading and text of paragraph 13 are particularly explicit with respect to the requirement to arbitrate all disputes arising between the parties. The Plaintiffs read paragraph 20 to completely eviscerate this very specific directive, because of a reference that "any . . . suit required between the parties . . . [is] to be filed . . . in the Supreme Court of New York." The Plaintiffs, however, accord no credence to the countervailing argument that their own interpretation of Paragraph 20 of the sale and purchase agreement would wholly eviscerate the

text of Paragraph 13 and its directive to arbitrate disputes. Courts faced with allegedly conflicting provisions in contracts are repeatedly cautioned to be slow in reaching a result which invalidates contractual provisions, but to instead strive where possible to interpret contracts in a manner which harmonizes and gives effect to all of their provisions. *See Siegel Transfer, Inc. v. Carrier Exp., Inc.,* 54 F.3d 1125, 1139 (3d Cir.1995) ("Cardinal rule in contract interpretation is that effect must be given to the intention of the parties and to all provisions in the agreement"); *see also In re Sugarhouse Realty, Inc.,* 192 B.R. 355, 365 (E.D.Pa. 1996)("Courts must read provisions of contract so as not to conflict with each other") That is easily accomplished here.

The Court notes that after reviewing the entirety of the agreement, there is nothing anywhere within its four corners that "requires" a lawsuit between the parties. On the contrary, there is only a clause which directs the arbitration of disputes. On might therefore posit that the language of paragraph 20, which refers to litigation, is itself mere surplusage. The Court views that result itself to be unlikely. More likely is that the reference to a venue for litigation exists in recognition of the fact that the findings of arbitrators with respect to the matters they hear are rarely, if ever, self-enforcing. Arbitrators, for example, could find the buyer in this case in default of its obligations under the sale and purchase agreement, and declare the Seller entitled to various remedies set forth in Paragraph 11 thereof. Arbitrators, however, could not enforce the seller's entitlement to the permanent injunctive relief described in Paragraph 11 of the agreement, or issue orders enabling the seller to execute on any monetary award in its favor. Paragraph 13 of the agreement, in fact, seems to recognize this, since it

states that any determination of the arbitrators will be enforceable as a judgment upon the filing of a copy thereof in the Office of the Chautauqua County Clerk. It strikes the Court that Paragraph 20 of the agreement is clearly not intended to derogate from the parties' overarching agreement to arbitrate disputes. Rather, it is meant, in part, to supplement Paragraph 13 by providing the venue and choice of law that would govern such litigation as might be necessitated in furtherance of enforcing the determination of an arbitration panel. Viewed thusly, the two paragraphs are not irreconcilable, such that one or the other must be entirely disregarded. Instead, the two paragraphs are consonant and may be harmonized to give full effect to the provisions of each. In short, the Court finds that the sale and purchase agreement contains a valid compulsory arbitration clause.

The Court turns next to the Plaintiffs' contention that even if the sale and purchase agreement is deemed to contain a valid arbitration clause, the Court is not bound to enforce it, but has the discretion,

regardless of whether the dispute at issue in the adversary proceeding is viewed as involving a core or non-core matter, to disregard the clause and direct trial of the case here. In this respect, however, the Plaintiffs insist that the adversary proceeding implicates the Court's core jurisdiction, making the analysis comparatively easier than it might otherwise be.

Curiously, for all that both Plaintiffs argue that this case clearly involves a core matter, neither points with specificity to any subparagraph of 28 U.S.C. § 157(b)(2) under which the adversary action allegedly falls.[2] Indeed, contrary to the pleading requirements of Federal Rule of Bankruptcy Procedure 7008(a), the Complaint filed in this matter does not actually recite whether the Plaintiffs' cause of action is asserted as being core or non-core in nature. The Plaintiffs' "cover sheet," indicates only that the complaint is one to "recover money or property." For its part, National Wire argues that the Complaint does no more than seek to enforce alleged payment obligations under a prepetition contract. This cause of action,

---

**2.** (2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distributions in a case under title 11;

(C) counterclaims by the estate against persons filling claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmation of plans;

(M) orders approving the use or lease of property including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2).

says National Wire, arises solely under non-bankruptcy law, and hence it must be viewed as being non-core. Given that, argues National Wire, the Court is obliged to give effect to the contractual arbitration clause and is without discretion to do otherwise. Having considered these central questions, the Court is persuaded that National Wire has the better part of the argument.

■■■ At the outset, a brief review of the Bankruptcy Court's jurisdictional structure is in order. As recently described by this District's Chief Bankruptcy Judge Fox:

> A proceeding is classified as "core" under 28 U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 267 (3d Cir.1991) (quoting *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir.1990) which, in turn, quoted *Matter of Wood*, 825 F.2d at 97). Thus, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . ." *In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir.1996).

The second category of proceedings is referred to as "non-core" or "related" proceedings. A bankruptcy court may hear such proceedings but may submit only proposed findings of fact and conclusions to the district court, *see* U.S.C. § 157(c)(1), unless all parties agree that a final judgment may be entered in bankruptcy court. U.S.C. § 157(c)(2); *see, e.g., Halper v. Halper*, 164 F.3d 830, 836 (3d Cir.1999). The Third Circuit Court of Appeals has defined a non-core proceeding in the following terms:

> Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless "related to" a bankruptcy case. *See* 28 U.S.C. § 157(c)(1). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted); *see In re Guild*, 72 F.3d at 1180–81. "[T]he proceeding need not necessarily be against the debtor or against the debtor's property." *In re Guild*, 72 F.3d at 1180–81. " 'A key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights liabilities, options or freedom of action or the handling and administration of the bankrupt estate.' " *Id.* at 1181 (quoting *In re Marcus Hook*, 943 F.2d at 264) (emphasis omitted).

*Halper v. Halper*, 164 F.3d at 837 (footnote omitted)

Thus, the concept of a "related" proceeding is wider in scope than that of a "core" proceeding. Indeed, all core proceedings must be related to a bankruptcy case and so may be considered a subset of the broader set. *See In re Central Ice Cream Co.*, 82 B.R. 933, 936 (N.D.Ill.1987)("a proceeding that is not a related proceeding *a fortiori* cannot be a core proceeding").

Finally, the third category of proceedings are those which fall outside the definition of "non-core" because their outcome would have no effect upon the bankruptcy case. The outcome of a dispute will not have any effect on the bankruptcy case typically because it will

**374**

not affect the property to be administered in the bankruptcy case, the total assets to be distributed, or the total claims to be paid. Over these proceedings a bankruptcy court has not subject matter jurisdiction. *See, e.g., Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984). One court described "unrelated" bankruptcy proceedings in the following way:

> Generally, bankruptcy courts lack jurisdiction to hear controversies between third parties which do not involve the debtor or property of the debtor, unless the court cannot perform its administrative duties without resolving the controversy .... Three elements must be satisfied in order to divest the bankruptcy court of its jurisdiction: (1) the proceeding must involve non-debtor, third-parties, (2) the proceeding must not involve the property of the debtor, and (3) the proceeding must not involve a necessary administrative function.

*Plaza at Latham Associates v. Citicorp North America, Inc.,* 150 B.R. 507, 512 (N.D.N.Y.1993) (citation omitted).

*Mandler and Voshell v. DVI Financial Services, Inc. (In re Nuclear Imaging Systems, Inc.)* Adv. No. 01–0882 (Bankr. E.D.Pa.2001) (Fox, Chief J.) Memorandum Opinion and Order dated September 24, 2001, pp. 5–7.

As to the Plaintiffs' assertions of core jurisdiction, the Court notes that there can be no argument that the instant dispute is not one which by its nature could only arise in the context of a bankruptcy case. On the contrary, breach of contract litigation falls squarely within the typical jurisdictional grant of almost all state trial courts. More significantly, however, adversary actions instituted to collect pre-petition contract claims, where the adverse party has not filed a proof of claim in the bankruptcy case, have historically been viewed here and elsewhere as being non-core matters over which the bankruptcy court possesses only "related to" jurisdiction. *Beard v. Braunstein,* 914 F.2d 434, 445 (3d Cir.1990). In order to distinguish the present case from the weight of unfavorable precedent, the Plaintiffs argue that the litigation must be viewed "in the context of the debtor's over all Chapter 11 bankruptcy case." The debt in dispute, say the Plaintiffs, represents not just a "garden variety" pre-petition account receivable. Rather, it is by far the most significant asset of the bankruptcy estate, and as such constitutes the primary source for the funding of New Knight's reorganization plan. Where such circumstances are present, say the Plaintiffs, the matter at issue must be deemed to be core in nature.

■ The Court agrees with the Plaintiffs that where a matter at issue falls within the Bankruptcy Court's core jurisdiction, the Court has greater latitude to exercise discretion with respect to the enforcement of contractual arbitration clauses. As recently observed by Chief Bankruptcy Judge Walsh in the District of Delaware:

> [W]here core bankruptcy issues are at stake, the majority view in this Circuit and others is that bankruptcy courts continue to enjoy discretion to refuse enforcement of an otherwise applicable arbitration provision provided the standard in *McMahon* [citations omitted] has been met. *E.g., Nat'l Gypsum,* 118 F.3d at 1067; *Selcke v. New England Ins. Co.,* 995 F.2d 688, 691 (7th Cir.1993) ("Even broadly worded arbitration clauses are assumed not to extend to claims that arise out of the provisions of the bankruptcy law itself ..."); *Am. Freight Sys. v. Consumer Prod. Assocs. (In re Am. Freight Sys., Inc.),* 164 B.R.

341, 347 (D.Kan.1994) ( "The teachings of *Hays & Co.* are not applicable to an adversary proceeding involving a core matter."); *In re Spectrum Info. Techs., Inc.*, 183 B.R. 360, 363 (Bankr.E.D.N.Y. 1995) ("[E]specially with respect to core proceedings, . . . arbitration should not triumph over the specific jurisdiction bestowed upon the bankruptcy courts under the Bankruptcy Code") (*citing cases*); *Sacred Heart Hosp. of Norristown v. Indep. Blue Cross (In re Sacred Heart Hosp. of Norristown)*, 181 B.R. 195, 202 (Bankr.E.D.Pa.1995) ("[A]s to core proceedings, this court may exercise its full panoply of discretion . . . in determining whether to refer a proceeding before it to arbitration"); *In re Glen Eagle Square, Inc.*, 1991 WL 71782 *1 (Bankr.E.D.Pa. May 1, 1991) (court retains discretion to order arbitration of core proceedings because "they impact upon the Debtor's relationship with its entire body of creditors"); *In re Day*, 208 B.R. 358, 369 (Bankr.E.D.Pa.1997) (bankruptcy courts retain enhanced discretion to deny enforcement of arbitration clauses in core proceedings); *Weinstock v. Frank, Frank & Cohen (In re Weinstock)*, 1999 WL 342764 *8 (Bankr. E.D.Pa. May 25, 1999) ("Whether it is appropriate that core matters be heard in the forum of an arbitration proceeding requires a balancing of the provisions and policies of the two federal statutes."); *In re United Co. Fin. Corp.*, 241 B.R. 521, 525 (Bankr.D.Del.1999) ("Of course . . . with respect to core matters, the Bankruptcy Court has exclusive jurisdiction which may not be delegated or supplanted by alternative dispute resolution procedures.").

*In re APF Co.*, 264 B.R. 344, 362 (Bankr. D.Del.2001)

 The Court does not agree, however, that the present adversary proceeding presents a core dispute. The Plaintiffs argue that the where the assets involved are the "linchpin" of a debtor's plan, disputes over them must be viewed as core. In support, the Plaintiffs rely on three decisions, all of which involved declaratory judgment actions brought to determine rights under insurance contracts in the Chapter 11 cases of debtors facing multiple personal injury claims for asbestos liability. *In the Matter of Celotex Corporation v. AIU Insurance Company*, 152 B.R. 667 (Bankr.M.D.Fla.1993); *In re Prudential Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.*, 170 B.R. 222 (S.D.N.Y. 1994); and *In re G–I Holdings, Inc., v. Reliance Insurance Company*, 278 B.R. 725 (Bankr.D.N.J.2002). The Court notes that in two of these three decision, i.e., *Celotex* and *Prudential*, the Court held the litigations before them to be core, using language which is arguably of some help to the Plaintiffs. In *Prudential*, for example, the Court noted that the insurance policies at issue, might well be the most important asset of the debtor's estate, and noted the fact that over 7,000 claims potentially covered under the policies had been filed in that bankruptcy case. These factors, said the Court, made the coverage determination "essential and inextricably tied to the administration of the estate." 170 B.R. at 229. In *Celotex*, the Court noted that each party in interest, whether debtor, defendants, general creditors at large, or asbestos related claimants, were all directly effected by "configuration of the insurance coverage linchpin." 152 B.R. at 676. These factors, said the *Celotex* Court, led to the common sense legal conclusion that resolution of the debate was the "centripetalization" of the Debtor's reorganization. *Id.* In *G–I Holdings*, on the other hand, the Court declared the coverage dispute before it to be non-core. In doing so, it distinguished both *Prudential* and *Celotex*,

observing that although the insurance proceeds in question were surely important to the G–I Holdings Debtor, it had not shown, a la *Prudential* or *Celotex,* any basis for characterizing them as the linchpin of, or as essential to, the effort to reorganize the Debtor. 278 B.R. 376, 384.

It surely goes without saying that resort to idiomatic expressions such as "linchpin" or "centripetalization" as the means by which to determine the boundaries of a Court's subject matter jurisdiction is inherently problematic. Indeed, one might say that this epitomizes the proverbial "slippery slope." There appears to be no controlling authority in this Circuit on whether the Plaintiffs' "linchpin" argument is a cognizable legal theory upon which to assert core jurisdiction. The Court concludes, however, that although somewhat dubious, even if it is a viable theory, the present facts would dictate the result reached in *G–I Holdings,* as opposed to the results reached in either *Prudential* or *Celotex.* In reaching this conclusion, the Court notes, among other things, that the latter cases involved thousands of personal injury claimants, making those cases obviously far more complex than this Chapter 11 case, which features a single secured creditor that under the Debtor's reorganization plan will receive fully 75% of the payments allegedly due from National Wire, and approximately 100 general unsecured creditors which will share the balance. The Court notes also that there is no expectation of continued operations by a reorganized Debtor in this Chapter 11 case. On the contrary, this is a liquidating reorganization case where the liquidation sale has already occurred. The Court accordingly finds these circumstances more akin to those in *G–I Holdings,* which is to say that although the favorable resolution of New Knight's dispute with National Wire is of obvious importance to it, since without the monies it hopes to recover it cannot fund its plan, the reorganization effort itself is premised on a liquidation of the Debtor's assets, and that has already taken place. To declare core jurisdiction in circumstances such as these would create a loophole of potentially enormous magnitude in the existing jurisdictional framework of the Bankruptcy Court, and would no doubt invite a rash of litigation designed solely to identify the precise point at which a particular matter might be said to pass beyond mere importance to a Chapter 11 debtor, and become instead the linchpin of its reorganization. Clearly, caution should be exercised before opening that "Pandora's box," but in any event the question does not strike the Court as close on the present facts. The Court therefore dismisses the notion that the matter at issue herein falls within its core jurisdiction.

■ As previously noted, the Plaintiffs contend that notwithstanding any finding by the Court that the instant dispute is non-core in nature, the Court in its discretion may still retain and hear the adversary proceeding. The Court again must disagree. National Wire correctly observes that there is a strong federal policy favoring arbitration and the enforcement of voluntary agreements to arbitrate. In this respect, § 3 of the Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3.

In *APF*, Judge Walsh would note that the judiciary has enforced the intent of the FAA's drafters:

The Supreme Court has interpreted the FAA as establishing a federal policy favoring arbitration which requires enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes. *Shearson/American Exp. v. McMahon*, 482 U.S. 220, 226–27, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987) (internal citations omitted) (holding claims under the Securities Exchange Act of 1934 and the federal RICO statute arbitrable and subject to the FAA).

As applied to bankruptcy proceedings, the Third Circuit has interpreted this holding to mean that if the underlying proceeding involves a debtor-derivative, non-core matter then the bankruptcy court does not have the authority to deny enforcement of the arbitration clause. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–57 (3d Cir.1989); *see also Crysen/Montenay Energy v. Shell Oil Co.*, 226 F.3d 160, 165–66 (2d Cir.2000) *cert. denied*, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001); *Ins. Co. of North Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1066–68 (5th Cir.1997).

*APF, supra*, at 361–362.

■■■ The Plaintiffs have failed to demonstrate that Congress intended in the Bankruptcy Code to preclude a waiver of judicial remedies for the rights the Plaintiffs seek to assert in the present adversary proceeding, nor have they persuaded the Court that any underlying purpose of the Bankruptcy Code will be adversely affected or seriously jeopardized by enforcing the arbitration clause. As there are no such inherent conflicts present, the Court will grant National Wire's Motion to compel arbitration of this non-core dispute and stay further proceedings in this adversary action pending further Order of Court.[3]

An appropriate Order follows:

### ORDER

AND Now, upon consideration of Defendant National Wire & Metal Technologies, Inc.'s ("National Wire") Motion seeking an Order staying this adversary proceeding and directing the parties to arbitrate their dispute or, in the alternative, dismissing the lawsuit, all answers in opposition thereto, and following consideration of the Memoranda of Law submitted by the par-

---

**3.** The Court notes the Committee's argument that if the Debtor is unsuccessful in any subsequent arbitration, but the assets transferred to National Wire are not returned to the Debtor, it may have the basis for initiating a fraudulent conveyance action. The Committee raises this in support of its corollary argument that for efficiency's sake the National Wire/New Knight dispute should be resolved in its entirety here. The Court dismisses this argument, which is founded in the first instance on speculation, because irrespective of the outcome of an arbitration, this argument does not provide an independent substantive basis to derogate from controlling authority vis a vis the Court's duty to uphold contractual arbitration clauses in non-core matters.

ties and argument heard March 13, 2003, it is hereby:

ORDERED, that the Motion of National Wire to Compel Arbitration be and the same hereby is Granted. Further proceedings in this adversary action are stayed pending further Order of this Court.